UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | No. 06 CR 535 |
| v. ) | Judge Blanche M. Manning |
| ) | |
| PETER THOMAS. ) | |

## MEMORANDUM AND ORDER

Defendant Peter Thomas entered a blind plea of guilty to two counts of distributing child pornography, *see* 18 U.S.C. § 2252A(a)(1), and one count of possession of child pornography, *see* 18 U.S.C. § 2252A(a)(5)(B). His crime involved trading images of child pornography with what turned out to be an undercover investigator. A subsequent search of his computer revealed at least 200 separate images of child pornography, some depicting the penetration of prepubescent minors. Thomas is before the court for sentencing.

### I. Sentencing Guidelines Calculation

In his Presentence Investigation Report, Thomas' probation officer calculated his sentencing range. At sentencing, Thomas agreed that the probation officer's calculation was correct. Therefore, the court adopts the following calculation.

Thomas' base offense level is 22. *See* U.S.S.G. § 2G2.2(a)(5)(B), (a)(2). To that, two levels are added because the material involved a minor under 12 years old. *See* U.S.S.G. § 2G2.2(b)(3)(B). Another two levels are added because the offense involved the use of a computer. *See* U.S.S.G. § 2G2.2(b)(6). Five levels are added because the offense involved distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain or, in other words, because Thomas distributed images in return for images he had received. *See* U.S.S.G. § 2G2.2(b)(3)(B). Four levels are added because the images portrayed sadistic or

masochistic conduct. *See* U.S.S.G. § 2G2.2(b)(4). Finally, three levels are added because the offense involved at least 150 but fewer than 300 images of child pornography. *See* U.S.S.G. § 2G2.2(b)(7)(c).

The resulting adjusted offense level is 38. From that the probation officer removed three levels for acceptance of responsibility and timely notification, resulting in a total offense level of 35. He has no criminal history points. His total offense level of 35, combined with a criminal history category of I, results in a sentencing range of 168 to 210 months. Thomas is subject to a statutory minimum sentence of 60 months. *See* 18 U.S.C. § 2252A(b)(1).

## II. Sentencing Factors Under 18 U.S.C. § 3553(a)

Under 18 U.S.C. § 3553(a), the court must impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing, which are:

    (1)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;

    (2)    to create adequate deterrence to crimes by others;

    (3)    to protect the public from future crimes by the defendant; and

    (4)    to provide the defendant with necessary treatment and training.

*See* 18 U.S.C. § 3553(a)(2). To those ends, the court must take into account the following factors:

    (1)    the nature and circumstances of the offense;

    (2)    the history and characteristics of the defendant;

    (3)    the kinds of sentences available;

    (4)    the sentencing range calculated under the Sentencing Guidelines;

(5) pertinent policy statements set forth in the Sentencing Guidelines;

(6) the need to avoid unwarranted sentencing disparities among defendants with similar records or who committed similar crimes; and

(7) the need to provide restitution to victims of the defendant's offense.

See 18 U.S.C. § 3553(a)(1-7). At the sentencing hearing and in Thomas' sentencing memorandum, the parties focused on two of these: the nature and circumstances of the offense, and the history and characteristics of the defendant.

### A.  Nature and Circumstances of the Offense

Thomas concedes that the nature of his offense was "abhorrent" and that the images were "*per se* sadistic." Accordingly, he suggested that the court decline any opportunity to view the pictures because he was admitting that "the nature and circumstances of the offense herein are unquestionably serious."

However, because Thomas faces a very harsh sentence, the court thought it important to accept the government's invitation to view a sampling of Thomas' images. What the court viewed was shocking. Image after image depicted young children engaged in unspeakable conduct. It did not take the court long to conclude that the images Thomas possessed were truly horrific, and that the nature and circumstances of his offense favors a very serious sentence.

### B.  History and Characteristics of the Defendant

Thomas' sentencing memorandum details a nightmarish childhood. His mother was mentally ill and abused alcohol and drugs. When Thomas was just 11 years old, his mother told him and two younger brothers to wait in a room in their home for a certain amount of time.

While they waited, she left home and never returned. Because his adoptive father was in the military and frequently away, Thomas was left to raise himself and his younger brothers.

His adoptive father eventually married the boys' babysitter and joined a fundamentalist church. His new stepmother physically abused him, including throwing objects at him. Their new church and its associated school had strict rules: no television or movies; dancing was evil; and even casual contact between a boy and girl was grounds for automatic expulsion. The school offered no sex education except to teach that sexuality was "bad," yet church elders molested two young girls that Thomas knew. The congregation accepted that the girls were evil and had seduced the elders, who remained in their leadership positions.

After high school, Thomas' family enrolled him in a fundamentalist bible college in Crown Point, Indiana. Although the school also prohibited contact between the sexes, his sexuality began to emerge, though not in a conventional way: a female administrator lured him into a secret relationship. Afraid he would be expelled if found out, he eventually withdrew from school, rejected his family's religion, and moved on his own to Chicago.

However, his emerging sexuality continued to lead him down unconventional paths. He began trading sexually explicit images of adults online. Though initially repulsed upon receiving an unsolicited picture of a partially dressed child, he soon found himself attracted to pictures he collected from child modeling sites. His interest in those pictures eventually led him to child pornography sites. Though he was disgusted with his attraction to such pictures, he could not stop himself. He was eventually caught in a government sting trading sexually explicit images of young girls with an undercover agent in June 2005. On August 23, 2005, federal agents searched his home and seized his computer. On July 26, 2006, he was indicted and arrested.

Thomas expressed his remorse to agents the day they searched his home. He immediately confessed and fully cooperated, including giving agents his username and password so that they could impersonate him in their continuing effort to identify additional offenders. Thomas' assistance has led to prosecutions and convictions of others engaged in similar conduct. Thomas also immediately contacted a hotline to obtain help for his addiction to child pornography. On his own volition, he began weekly therapy sessions with a counselor within a week of the search of his home. He also attends Sex Addicts Anonymous twice a week. Over the past two-and-a-half years, he has rarely missed a session.

Thomas' counselor wrote to the court to express her view that Thomas' addiction is the likely consequence of his repressive upbringing, including that demonization of the young girls who were abused by church elders. She also predicts "that the likelihood of relapse is minimal given the psychological integrity of [Thomas], his tremendous moral strength, and the social and personal support he enjoys."

Friends and family also wrote numerous letters in support of Thomas. The writers acknowledge their shock and anger at Thomas' crime. But even with that in mind, they describe a person who is "pleasant and kind," "well-liked," "respected by those with whom he works," with the "potential to become a productive, valued educator and scholar." Many of the writers are professors or classmates who came to know Thomas during his studies at DePaul University.

His long-term girlfriend, Mary Chenore, also wrote to attest to Thomas' generally good character. She is proud of the person he is today and the hard work in therapy that it took to get there. She tells of sitting next to him as he shared with friends what he had done, and the look of surprise on his face that his friends have not shunned him. She tells him that they may hate what

he did, but they "also recognize that there is much more good in him than bad." She also recounts his requests earlier in the year of his arrest that she cancel the couple's America Online account (the account Thomas used to access child pornography). She procrastinated, and now regrets that she did not recognize that he was reaching out for help as best he could at the time.

Thomas also submitted a written statement in allocution. He describes being "wracked daily by guilt and shame" by his inability to stop viewing pornographic images of children. Now that he realizes he suffers from a sexual addiction, he is breaking the "cycle of guilty, shame, and pain that resulted in actions that I detested even as I did them." He expresses remorse for perpetuating the victimization of the girls depicted in the images he traded, and is "fully committed" to continuing with his therapy in order to never repeat his crime.

The court also heard from Thomas at sentencing. He expressed his deep remorse for his crime, and his continued commitment to avail himself of all the treatment and support that, by all accounts, have thus far been successful for Thomas. The court was taken by his demeanor and sincerity, and believes that Thomas' remorse was sincere and that he has poured tremendous effort into controlling his addiction and rehabilitating himself. The court also notes that Thomas has expended tremendous resources on bettering himself in other ways, including recently earning a masters degree with honors in English this past fall.

### C. Sufficient, But Not Greater Than Necessary, Sentence

Thomas' crime was heinous. Even though he did not physically violate any of the girls depicted in the images on his computer, he nevertheless perpetuated their victimization by viewing and then trading their images over the Internet. Additionally, his computer included hundreds of these images, some of which were sadistic and masochistic in nature. All of these

factors favor a very serious sentence along the lines of the sentence provided under the Sentencing Guidelines.

However, the court is not free to ignore the other sentencing factors set out under § 3553(a), some of which are not taken into account under the Guidelines. Specifically, the court finds that following additional factors to be significant:

- Thomas' crime was rooted in a sexual addiction that his therapist attributes to his tumultuous childhood, which included abandonment by his mother and a repressive atmosphere at home and school;

- Thomas' development was stunted because, after his mother abandoned the family when he was 11, he was left to raise his younger siblings and to fend off an abusive step-mother;

- Thomas was repulsed by his own conduct, but his addiction would not let him stop;

- He reached out for help as best he could by asking his girlfriend to cancel their Internet access;

- Once caught, he immediately confessed, sought help for himself, and offered whatever help he could to investigators, which resulted in the prosecution and conviction of others engaging in conduct similar to Thomas';

- On his own volition and before being indicted, Thomas began treatment for his addiction. He regularly sees a therapist and attends a 12-step program;

- He now recognizes his addiction, and has taken every step possible to control it;

- He has the support of friends, his girlfriend, and his girlfriend's family to keep his addiction under control;

- Despite the tumult in his life, Thomas has continued to attempt to better himself, and has recently earned a master's degree with honors.

Although these factors are favorable to Thomas, the court must also choose a sentence that will deter Thomas and others from engaging in similar conduct. The need to deter others

must be met by imposing a substantial sentence. But the court must also take into account the tremendous efforts that Thomas has put into controlling his addiction, and his therapist's view that because of Thomas' hard work, his risk of repeating his crime has been lessened.

Thomas has requested a sentence of the statutory minimum of 60 months. Such a sentence would not adequately account for the nature and circumstances of his offense. While it is true that in setting 60 months as the statutory minimum, Congress determined that such a sentence would be adequate in some circumstances, the court cannot ignore the aggravating factors present in this case, specifically the large number of images involved and the sadistic and masochistic nature of some images.

## CONCLUSION

Consequently, the court will impose upon Thomas a sentence of 84 months. Such a sentence takes into account the heinous nature of the crime and the existence of the aggravating circumstances discussed, but also accounts for the tremendous efforts Thomas has made towards rehabilitation, his lowered chances of recidivism, the support he has from family and friends, and the fact that extending his prison sentence any further is unlikely to further his efforts at rehabilitation any more than private counseling and his 12-step program already have.

ENTER:

DATE: February 29, 2008

Blanche M. Manning
United States District Judge